Edward R. WALTON, Sr.

v.

**NATIONAL RAILROAD PASSENGER CORP. t/a Amtrak.**

Civ. A. No. N–85–3322.

United States District Court, D. Maryland.

June 12, 1986.

Irving Schwartzman, and Savage & Schwartzman, Baltimore, Md., for plaintiff.

Mark Daneker, Michael W. Prokopik, and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

Pending before the Court is a motion in limine filed by the defendant, the National Railroad Passenger Corporation. The plaintiff was injured while employed by the defendant, and filed this suit under the Federal Employers' Liability Act.[1] The defendant seeks to exclude evidence of the amount of the plaintiff's medical expenses from the plaintiff's proof of damages. Those expenses were paid on behalf of the plaintiff by insurance.

Under the governing collective bargaining agreement, the defendant is required to provide medical insurance to its employees, including the plaintiff, in the form of Traveler's Insurance Group Policy Contract GA–23000. Article III, Section A of the policy states:

In cases of an injury or a sickness for which an employee who is eligible for employee benefits under Group Policy Contract GA–23000 and may have a right of recovery against either the employing railroad or a third party tortfeasor (a party who has committed a wrongful act), or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth.... Accordingly,—

(1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

The defendant contends in its motion that this insurance policy and the medical payments provided by it are not wage equivalents or fringe benefits, and thus not collateral source benefits. As such, the defendant asserts, the benefits would not constitute collateral source payments, and would not be admissible.

Under the collateral source rule, a plaintiff's recovery for negligence is not diminished by payments from a collateral source such as an insurance company. The amount of these payments is therefore recoverable by the plaintiff. The rationale behind this rule is that there is no double recovery as long as the plaintiff has contributed to the original source of the payments received.

This Court held in *Poole v. The Baltimore And Ohio Railroad Co.*, 657 F.Supp. 1 (D.Md.1985) that benefits under the Traveler's GA–23000 policy are collateral source benefits, subject to recovery by the plaintiff, and hence admissable. The Court found the policy to be a fringe benefit, given in consideration for the employees' services. The Court afforded little weight to the language of Art. V, sect. 1(d)(1) of the collective bargaining agreement,[2] and relied instead on its sense of labor realities and the authority of the following cases: *Clark v. Burlington Northern, Inc.*, 726 F.2d 448 (8th Cir.1984); *Patterson v. Norfolk and Western Railway Co.*, 489 F.2d 303 (6th Cir.1973); *Blake v. Delaware and Hudson Railway Co.*, 484 F.2d 204 (2d Cir.1973); *Hall v. Minnesota Transfer Railway Co.*, 322 F.Supp. 92 (D.Minn.1971).

The same result is dictated by the applicable statute, 45 U.S.C. § 55, section 5 of the FELA. Section 5 of FELA preempts the federal common law, namely the collateral source rule, and sets forth the governing law in a FELA case. *See Blake, supra* 484 F.2d at 207 (J. Friendly concurring). Section 5 provides that:

Any contract, rule, regulation or device whatsoever the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter shall to that extent be void; provided, that in any action

---

1. 45 U.S.C. §§ 51–60 (1972).

2. "In addition to the payments hereinafter provided for, carriers whose employees are insured under The Travelers Insurance Company Group Policy Contract No. GA–23000 with respect to both employee benefits and dependent benefits will transmit to The Travelers Insurance Company 81 cents per 'Qualifying Employee' per month as premium for the insurance benefit payments resulting from on-duty injuries. The amounts so transmitted are not considered as wage equivalents."

brought against any such common carrier under or by virtue of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

As Judge Friendly noted in *Blake*, the railroad is entitled under this section to set off only the premiums paid into the policy on behalf of the injured employee, not the benefits that the premiums bought.

In two cases decided over seventy years ago, the Supreme Court definitively interpreted this section and stringently limited the extent to which employers could exempt themselves contractually from liability under FELA. *Philadelphia, Baltimore & Washington Railroad Co. v. Schubert*, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912); *Chicago & Alton Railroad Co. v. Wagner*, 239 U.S. 452, 36 S.Ct. 135, 60 L.Ed. 379 (1915). In both cases, the employer-railroad and the employee had entered into an agreement whereby the employee's acceptance of "benefits for injury" released all claims against the railroad arising out of the injury. The Court, per Justice Hughes, held in each instance that the agreement did not release the employer from liability under the section for the injury, and that the section permitted the employer to set off only the sum it had contributed into the fund for that worker (the equivalent of premiums on an insurance policy). It could not set off the total benefits provided to the injured employee, nor bar a suit for additional damages. *Accord Bangor & Aroostook R. Co. v. Jones*, 36 F.2d 886 (1st Cir.1929).

Though the benefit plans in *Schubert* and *Wagner* were jointly funded by employer and employee, while plan GA–23000 is funded by the employer alone, this distinction does not affect the outcome. As noted above, employees indirectly contribute to GA–23000 because the policy is a fringe benefit. Moreover, the outcome of the earlier cases did not turn on the fact that it was the employees themselves who contributed much of the funds from which benefits were drawn. In the instant case, the source of the benefits are the premiums of all Traveler's policy owners as well as the assets of the Traveler's itself.

Accordingly, the motion in limine is denied. A separate Order will be entered confirming the ruling herein.