Antonio **GONZALEZ**, Plaintiff,

v.

**INDIANA HARBOR BELT RAILROAD CO.,** Defendant.

Civ. No. H 83–314.

United States District Court,
N.D. Indiana,
Hammond Division.

July 14, 1986.

Sheldon Cohan, Merrillville, Ind., for plaintiff.

Harold Abrahamson, Hammond, Ind., for defendant.

### ORDER

MOODY, District Judge.

This matter comes before the court on defendant Indiana Harbor Belt's Motion for Summary Judgment and Motion in Limine which were filed on June 9, 1986. The plaintiff filed a response in opposition on

June 27, 1986 to which the defendant replied on July 7, 1986. For reasons discussed below, the motions are GRANTED.

## I.

By his motion the defendant presents the question of whether the collateral source rule applies to insurance proceeds that Gonzalez received under a policy for which Indiana Harbor Belt Railroad paid 100 percent of the premiums. By his complaint, Gonzalez seeks damages for personal injuries allegedly incurred due to the negligence of his employer, defendant Indiana Harbor Belt Railroad. The action is brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA).

By its motions, the defendant argues that the plaintiff may not seek damages for medical bills that have been paid by Travelers Insurance Company under Group Policy GA23000. That policy, issued and maintained pursuant to a Health and Welfare Agreement between many railroads, including the defendant, and the collective bargaining representatives of their employees, covers hospital and medical expenses of the insured employees, including plaintiff, and of their dependents. The premiums on the policy are paid by the several railroads.

Article III, Section A(1) of the Health and Welfare Agreement provides as follows:

> In case of an injury or a sickness for which an employee who is eligible for employee benefits under Group Policy Contract GA–23000 and may have a right of recovery against either the employing railroad or a third party tort-feasor (a party who has committed a wrongful act), or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tort-feasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend that benefits provided under the policy contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. Accordingly,
>
> (1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

The defendant asserts that the language of the Agreement now bars the plaintiff's claim for medical bills. The plaintiff, in response, asserts that the insurance policy constituted a "fringe benefit" to the plaintiff and, as such, is a "collateral source" of recovery against which the defendant may not set-off the amount of premiums paid or benefits received thereunder by the employee.

## II.

Issues relating to the measure of damages in FELA actions are governed by federal law, including Section 5 of the FELA, 45 U.S.C. § 55, which provides:

> Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action is brought.

In determining whether benefits are exempt from set-off under the collateral source rule, the cases distinguish between payments emanating from a fringe benefit such as a retirement fund or a general hospital and medical insurance plan, and

payments which the employer has undertaken voluntarily to indemnify itself against possible liabilities under the FELA. *Clark v. Burlington Northern,* 726 F.2d 448, 450 (8th Cir.1984). Thus, if an insurance policy is provided in part consideration for the employee's services, the collateral source rule applies even though the employer paid 100 percent of the premiums. *Patterson v. Norfolk and Western Railway,* 489 F.2d 303, 307 (6th Cir.1973). *See also Blake v. Delaware and Hudson Railway Company,* 484 F.2d 204 (2nd 1973); *Lucht v. Chesapeake & O. Ry. Co.,* 489 F.Supp. 189 (W.D.Mich.1980); *Urbaniak v. Erie Lackawanna Ry. Co.,* 424 F.Supp. 981 (W.D.N.Y.1977); *Hall v. Minnesota Transfer Railway Company,* 322 F.Supp. 92 (D.Minn.1971). However, blanket application of the FELA's codified collateral source rule has come under judicial criticism. In a concurring opinion in the *Blake* case, *supra* at 207, Judge Friendly stated:

> Permitting Blake to recover from the railroad the bulk of his hospital bills, which were paid by the railroad and not by him, seems to be shockingly unjust.
>
> \* \* \* \* \* \*
>
> If the railroads wish to avoid the harsh result reached by the district court, they can accomplish this by specific provision in the collective bargaining agreement.

The defendant argues that Article III, Section A of the subject Health and Welfare Agreement is the kind of "specific provision" referred to by Judge Friendly that would prevent the application of the seemingly harsh collateral source rule.[1]

In *Clark v. Burlington Northern, Inc.,* 726 F.2d 448 (8th Cir.1984) the court accepted an argument similar to that which the defendant here asserts. The court held that where an employer clearly expresses an intent to make a voluntary benefit plan supplemental to sums recovered under the FELA, setoff is appropriate. 726 F.2d at 451. There, the employer's disability plan

explicitly provided that money paid or payable under the FELA decreased the benefits allowable. The court stated that "the employer's manifest intent to avoid double liability in offering disability plans must be respected if the collateral source rule is not to swallow up 45 U.S.C. § 55 at the ultimate expense of employees." 726 F.2d at 451.

Likewise, in the case at bar, the employer manifested its intent to make its employee benefit plan supplemental to sums recovered under the FELA. Thus, the plaintiff may not obtain double recovery of medical expenses previously paid to him under Travelers Group Policy, GA–23000. *See Thomas v. Penn Central Company,* 379 F.Supp. 24 (W.D.Pa.1974); *Nelson v. Penn Central R.R. Co.,* 415 F.Supp. 225 (S.D.Ohio 1976); *Rogers v. Chicago and Northwestern Transportation Company,* 59 Ill.App.3d 911, 16 Ill.Dec. 845, 375 N.E.2d 952 (1978). *Cf. Urbaniak, supra* at 984 (court felt constrained to follow *Blake* after finding no "specific provision" in the collective bargaining agreement before it).

## CONCLUSION

Accordingly, it is ORDERED that the defendant's motion for partial summary judgment be GRANTED as to the plaintiff's claim for medical expenses; it is further

ORDERED that the defendant's motion in limine be GRANTED so as to preclude the plaintiff from offering evidence of medical expenses at the trial of the above-entitled cause of action.

---

**1.** This court has previously found the collateral source rule inapplicable to payments made pursuant to Travelers Group Policy GA–23000 because of the terms of the Health and Welfare

Agreement between Indiana Harbor Belt Railroad and its employees. *Diaz v. Indiana Harbor Belt Railroad,* No. 79–13, (N.D.Ind. filed Dec. 1, 1981).